1  J. Ronald Ignatuk - Bar No. 150737
   Franklin J. Contreras, Jr. - Bar No. 235932
2  Shane M. Biornstad - Bar No. 250202
   **SHULMAN BASTIAN FRIEDMAN & BUI LLP**
3  100 Spectrum Center Drive, Suite 600
   Irvine, California 92618
4  Telephone:     (949) 340-3400
   Facsimile:     (949) 340-3000
5  Email:        RIgnatuk@shulmanbastian.com
                 FContreras@shulmanbastian.com
6                SBiornstad@shulmanbastian.com

7  Christopher P. Katers - Wisc. Bar No. 1067557
   **KATERS & GRANITZ, LLC**
8  8112 W. Bluemound Rd., Suite 101
   Milwaukee, WI  53213
9  Telephone:     (414) 600-0115
   Facsimile:     (414) 600-9551
10 Email:        ckaters@katersgranitz.com

11 Attorneys for Cachet Financial Services

12                  **UNITED STATES BANKRUPTCY COURT**

13          **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

14

15 In re:                                  Case No. 2:20-bk-10654-VZ

16 CACHET    FINANCIAL    SERVICES,   a    Chapter 11
   California corporation,
17                                         Adv. No. 2:22-ap-01029-VZ
                  Reorganized Debtor.
18 ─────────────────────────────────────  **PLAINTIFF CACHET FINANCIAL
                                           SERVICES' OPPOSITION TO PIONEER
19 CACHET FINANCIAL SERVICES, a            BANCORP INC.'S AND PIONEER BANK'S
   California corporation,                 MOTION TO DISMISS DEBTOR'S SECOND
20                                         AMENDED COMPLAINT
                  Plaintiff,
21                                         Filed concurrently with Appendix of Unpublished
        v.                                 Decisions
22 PIONEER BANCORP INC.; PIONEER
   BANK; and DOES 1-10,                    **Motion Hearing Date and Time:**
23                                         Date:     July 11, 2024
                  Defendants.              Time:     11:00 a.m.
24                                         Dept.:    Crtm:  1368

25                                         **Current Status Conference**
                                           Date:     September 26, 2024
26                                         Time:     10:30 a.m.
                                           Dept.:    Crtm:  1368
27

28

1

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................8

I.    SUMMARY OF ARGUMENT ................................................................8

II.   STATEMENT OF FACTS.....................................................................8

III.  ARGUMENT ...................................................................................9

    A.    The Court Should Not Consider A Motion To Dismiss A Claim For Relief When It Previously Denied A Motion To Dismiss That Claim Brought On Different Grounds ...................................................................9

    B.    Cachet Stated A Claim Under 18 U.S.C. Section 1962(c) ........................9

        1.    Cachet Adequately Alleged an Associated-in-Fact Enterprise Exists and that Pioneer Was a Member of the Enterprise.......................12

        2.    Cachet Adequately Alleged that Pioneer Participated in the Affairs of the Enterprise.......................................................16

        3.    Cachet Adequately Alleged that the Pattern of Racketeering Activity Proximately Caused Its Injuries ......................................18

    C.    Cachet Adequately Alleged A RICO Conspiracy ..............................21

    D.    Cachet Adequately Alleged A Claim for Conversion .........................24

        1.    Cachet Has Standing to Sue Pioneer for Conversion ...................24

        2.    Cachet Does Not Require a Constructive Trust to State a Claim for Conversion ...........................................................26

        3.    A Constructive Trust Arose at the Time of the Thefts ..................28

        4.    Cachet Does Not Have an Adequate Legal Remedy Against Mann or MyPayrollHR Because They are Insolvent ...............................30

        5.    Cachet Adequately Alleged Pioneer's Wrongful Refusal to Turn Over the Funds to Cachet ......................................................32

        6.    Cachet Adequately Alleged a Conversion Claim with respect to the Funds in the Weitz Account ..........................................32

    E.    Cachet Adequately Alleged Unjust Enrichment And Money Had And Received Claims.......................................................................33

        1.    Pioneer had Authority to Return the Funds to Cachet ..................33

        2.    Cachet Adequately Alleged a Relationship with Pioneer ..............34

        3.    The Remarketer Agreement Does Not Govern the Subject Matter ............36

F.    Cachet Adequately Alleged Aiding and Abetting Fraud and Conversion
      Claims...................................................................................................................39

G.    Leave To Amend Should Be Granted .................................................................40

IV.    CONCLUSION ...................................................................................................................41

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

（continued）

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baumer v. Pachl,*
  8 F.3d 1341 (9th Cir. 1993) .................................................................................. 22

*Bellino Schwartz Padob Advert. v Solaris Mktg. Grp.,*
  222 A.D.2d 313, 635 N.Y.S.2d 587 (App. Div. 1st Dept. 1995) ............................ 38

*Boyle v. U.S.,*
  556 U.S. 938 (2009) ............................................................................................. 12

*Camp v. Dema,*
  948 F.2d 455 (8th Cir. 1991) ................................................................................ 11

*Cargill Soluciones Empresariales, S.A. De C.V., SOFOM, E.N.R. v.*
*Desarrolladora Farallon S. de R.L. de C.V.,*
  2017 N.Y. Misc. LEXIS 2967, 2017 NY Slip Op 31650(U) (Sup. Ct. N.Y.
  Cnty. July 21, 2017) .............................................................................................. 31

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.,*
  70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987) ............................ 37, 38

*Cohen v. Trump,*
  200 F.Supp.3d 1063 (S.D. Cal. 2016) ................................................................... 17

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.,*
  2012 WL 10731957 (C.D. Cal. June 29, 2012) ...................................................... 14

*Daly v. Atl. Bank of New York,*
  201 A.D.2d 128, 614 N.Y.S.2d 418 (App. Div. 1st Dept. 1994) ................. 26, 27, 32

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC,*
  631 F.3d 42 (2d Cir. 2011) ................................................................................... 33

*Ellis v. JPMorgan Chase & Co.,*
  752 F. App'x 380 (9th Cir. 2018) .......................................................................... 14

*Feigen v Advance Capital Mgt. Corp.,*
  150 A.D.2d 281 (1989) ......................................................................................... 38

*In re First All. Mortg. Co.,*
  471 F.3d 977 (9th Cir. 2006) ................................................................................ 11

*In re First Cent. Fin. Corp.,*
  377 F.3d 209 (2d Cir. 2004) ................................................................................. 31

*Ga. Malone & Co., Inc. v. Rieder*,
19 N.Y.3d 511, 950 N.Y.S.2d 333, 973 N.E.2d 743 (2012) .................................................. 34

*Gardner v. Starkist Co.*,
418 F. Supp. 3d 443 (N.D. Cal. 2019) ................................................ 14

*Gerrity Co. v. Bonacquisti Constr. Corp.*,
156 A.D.2d 800, 549 N.Y.S.2d 532 (App. Div. 3rd Dept. 1989) ...................... 26

*Glen Flora Dental Ctr., Ltd. v. First Eagle Bank*,
2024 WL 621601 (N.D. Ill. Feb. 14, 2024) .................................................. 23

*Global View Ltd. Venture Cap. v. Great Cent. Basin Expl.*,
288 F. Supp. 2d 473 (S.D.N.Y. 2003) ................................................ 24

*Goldman v. Metro. Life Ins. Co.*,
5 N.Y.3d 561, 807 N.Y.S.2d 583, 841 N.E.2d 742 (2005) .................................. 37

*Gomez v. Guthy-Renker, LLC*,
2015 WL 4270042 (C.D. Cal. July 13, 2015) ............................................... 14

*Howard v. America Online, Inc.*,
208 F.3d 741, (9th Cir. 2000), ................................................................ 21

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
609 F. Supp. 3d 942 (C.D. Cal. 2022) ........................................................ 23

*Kamdem-Ouaffo v. Pepsico, Inc.*,
2015 WL 1011816 (S.D.N.Y. Mar. 9, 2015) .................................................. 31

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
27 F. Supp. 3d 447 (S.D.N.Y. 2014) ......................................................... 35

*Mandarin Trading Ltd. v. Wildenstein*,
16 N.Y. 3d 173, 919 N.Y.S.2d 465, 944 N.E.2d 1104 (2011) .......................... 35, 36

*McEssy v. Gray*,
2016 WL 10518458 (N.D.N.Y. Aug. 11, 2016) .......................................... 38, 39

*Mueller v. Michael Janssen Gallery PTE. Ltd.*,
225 F. Supp. 3d 201 (S.D.N.Y. 2016) ........................................................ 38

*Musalli Factory For Gold & Jewelry v. JP Morgan Chase Bank, N.A.*,
261 F.R.D 13 (2009) ......................................................................... 39

*N. Hill Funding of N.Y., LLC v. Amincor Other Assets, Inc.*,
2016 N.Y. Misc. LEXIS 4922, 2016 NY Slip Op 32638(U) (Sup. Ct. N.Y.
Cnty. Jan. 17, 2016) ......................................................................... 31

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

*Neilson v. Union Bank of Cal., N.A.,*
    290 F.Supp.2d 1101 (C.D. Cal. 2003).................................................................. 11

*Odom v. Microsoft Corp.,*
    486 F.3d 541 (9th Cir. 2007)............................................................................. 10, 12

*Oki Semiconductor Co v. Wells Fargo Bank Nat. Ass'n.,*
    298 F.3d 768 (9th Cir. 2002).......................................................................11, 21, 22

*In re Outlaw Lab., LP Litig.,*
    2020 U.S. Dist. LEXIS 71759 (S.D. Cal. Apr. 23, 2020) ................................ 17

*Schreibman v. Chase Manhattan Bank,*
    15 A.D.2d 769, 224 N.Y.S.2d 977 (App. Div. 1st Dept. 1962) ...................... 27, 32

*Tatung Company Ltd. V. Shu Tze Hsu,*
    217 F.Supp.3d 1138 (S.D. Cal. Nov. 14, 2016) ............................................... 16

*U.S. v. Tille,*
    729 F.2d 615 (9th Cir. 1984)............................................................................ 22

*United Food & Com. Workers Unions v. Walgreen Co.,*
    719 F.3d 849 (7th Cir. 2013)............................................................................ 14

*United States v. $79,000 in Acct. No. 2168050/6749900 at Bank of New York,*
    1996 WL 648934 (S.D.N.Y. Nov. 7, 1996) ..................................................... 31

*United States v. Cambio Exacto,*
    166 F.3d 522 (2d Cir. 1999).......................................................................... 24, 25

*United States v. Christensen,*
    801 F.3d 970 (9th Cir. 2015)........................................................................... 11, 12

*United States v. Fernandez,*
    388 F.3d 1199 (9th Cir. 2004).......................................................................... 22

*United States v. Fontana,*
    528 F. Supp. 137 (S.D.N.Y. 1981).................................................................. 29, 30

*United States v. PokerStars,*
    2012 WL 1659177 (S.D.N.Y. 2012) ............................................................... 31

*Valadez v. Aguallo,*
    2009 U.S. Dist. LEXIS 144988 (N.D. Cal. Aug. 28, 2009)............................ 17

*Vincent V Hodes Family Irrevocable Tr. v. Advance Entm't LLC,*
    2020 WL 3060892, 2020 NY Slip Op 31786(U) (Sup. Ct. N.Y. Co. June 05,
    2020)................................................................................................................. 35

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

*Vitale v. Steinberg*,
    307 A.D.2d 107, 764 N.Y.S.2d 236 (App. Div. 1st Dept. 2003) .......................................... 38

*Walter v. Drayson*,
    538 F.3d 1244 (9th Cir. 2008) ........................................................................................ 16, 17

*Woodward v. Metro Bank of Dallas*,
    522 F.2d 84 (5th Cir. 1975) .................................................................................................. 11

**Statutes**

18 U.S.C. § 1956 ............................................................................................................................ 15

18 U.S.C. § 1962 .............................................................................................................................. 9

**Rules**

Fed. Rule of Civ. Proc. 7 .................................................................................................................. 9

Fed. Rule of Civ. Proc. 12 ............................................................................................... 8, 9, 24, 33

Fed. Rules of Civ. Proc. 19 .............................................................................................................. 9

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff and Reorganized Debtor Cachet Financial Services ("Cachet") hereby opposes Defendants Pioneer Bank's and Pioneer Bancorp, Inc.'s (collectively "Pioneer") Motion to Dismiss ("MTD") Cachet's Second Amended Complaint ("SAC") as follows.

## I.     SUMMARY OF ARGUMENT

The Court denied Pioneer's Motion to Dismiss the First Amended Complaint ("FAC") as to the conversion, unjust enrichment and money had and received claims. Pioneer improperly seeks reconsideration of those rulings and raises new arguments without explanation in violation Federal Rules of Civil Procedure, Rule 12(g)(2). Pioneer's request for dismissal of these claims should be summarily denied for this reason.

In seeking dismissal of Cachet's RICO and RICO conspiracy claims Pioneer simply ignores Cachet's allegations that plausibly allege each element, relies heavily on inapposite Second Circuit law and argues elements that are not required. The RICO claims are properly pled.

In rearguing for dismissal of Cachet's conversion claim Pioneer misstates the factual basis for the claim, proffers illogical arguments regarding standing, and misconstrues the distinction between the concept of a constructive trust and a constructive trust remedy. Conversion is properly pled.

In rearguing for dismissal of Cachet's unjust enrichment and money had and received claims Pioneer again misstates the factual basis for the claims, cites inapposite authority and absurdly argues that a contract between Cachet and MyPayrollHR governs Cachet's claims in this action.

Finally, Cachet's aiding and abetting claims sufficiently alleges Pioneer's actual knowledge of the fraud and conversion and Pioneer's substantial assistance in assisting Michael Mann ("Mann") perpetrate these acts such that these claims should not be dismissed.

## II.     STATEMENT OF FACTS

Cachet generally agrees with Pioneer's statement of facts and will not repeat them here. However, Cachet notes that Pioneer conspicuously omits discussing the allegations ███████

████████████████████████████████████████████

████████████████████████████████████████████

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████ (SAC,

¶ 128)

### III.  ARGUMENT

**A.  The Court Should Not Consider A Motion To Dismiss A Claim For Relief When It Previously Denied A Motion To Dismiss That Claim Brought On Different Grounds**

Federal Rules of Civil Procedure, Rule 12(g)(2), states, "Except as provided in Rule 12(h)(2) or (3),[1] a party that makes a motion under this rule <u>must not</u> make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." (emphasis added). Thus, under Federal Rules of Civil Procedure, Rule 12(g)(2), a party cannot raise successive motions to dismiss that raise arguments that could have been made in a prior motion.

This Court denied Pioneer's motion to dismiss the conversion, unjust enrichment and money had and received claims for relief in the First Amended Complaint (Amended Order re: FAC ("Am. Order"), at 55:22-24, Dkt. 141.) Cachet did not make any substantive changes in the SAC to these claims for relief. In seeking dismissal of these identical claims in the SAC Pioneer repeats the same arguments in some cases. In other cases, it makes new arguments without explaining why it could not have previously raised these arguments. The Court should not consider Pioneer's motion to dismiss the conversion, unjust enrichment and money had and received claims for relief made in violation of Rule 12(g)(2).

**B.  Cachet Stated A Claim Under 18 U.S.C. Section 1962(c)**

Pioneer ignores the allegations that exemplify, *inter alia*, how Cachet was a direct victim of the illegal scheme and was left holding the bag when the kite was finally halted as well as Pioneer's

---

[1] Federal Rule of Civil Procedure, Rule 12(h)(2) and (3) states, "Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial. If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

efforts to launder and hide the proceeds of the illegal kiting and money laundering scheme. (SAC, ¶¶ 40-59, 87-92, 105-124, 130-142) While this Court analyzed the FAC under 9th Circuit law, Pioneer has chosen to heavily rely on Second Circuit Law. On this basis alone Pioneer's request to dismiss the RICO claims should be rejected.

Pioneer argues that the SAC involves group pleading. Pioneer relies on paragraph 42 of the SAC for the proposition that it cannot determine who initiated the fraudulent NSF transactions. (Motion to Dismiss the SAC ("MTD"), 9:9-13) But Pioneer ignores paragraph 41 which alleges,

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████ (SAC, ¶ 194)

Further, Pioneer argues that the SAC fails to allege facts that evidence Pioneer agreed to participate in the Enterprise. The Ninth Circuit model jury instructions do not include an "agreement" element in regard to a 1962(c) because one does not exist. (Ninth Circuit Model Civil Jury Ins. 8 – Civil RICO) Agreement is only raised in the context of a RICO conspiracy claim under Section 1962(d). The gravamen of Pioneer's argument is that it did not agree to participate, not that it did not take the actions alleged in the SAC, or that without those actions the years long kiting scheme could not have continued.

1    Nevertheless, the Ninth Circuit has made clear that even in the conspiracy context, Section

2    1962(d), the "agreement need not be express as long as its existence can be inferred from words,

3    actions, or interdependence of the activities and persons involved." *Oki Semiconductor Co v. Wells

4    Fargo Bank Nat. Ass'n.,* 298 F.3d 768, (9th Cir. 2002).  Even if "agreement" was an element of a

5    Section 1962(c) claim, which it is not, the question of whether there was an agreement is a factual

6    issue which cannot be determined on a motion to dismiss.  Further, "It is sufficient that the defendant

7    know the general nature of the enterprise and know that the enterprise extends beyond his individual

8    role." *United States v. Christensen*, 801 F.3d 970, 985 (9th Cir. 2015); *see also* Ninth Circuit Model

9    Civil Jury Ins. 8 – Civil RICO. In addition, atypical business transactions support allegations of

10    knowledge. *Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp.2d 1101, 1120-21 (C.D. Cal. 2003)

11    (banks using atypical banking procedures supports general allegations of knowledge), citing *Aetna*

12    *Cas. and Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 536 (6th Cir. 2000) ("although short-term

13    lending may be 'commonplace,' the details of this particular loan (*e.g.*, its four-day duration

14    straddling the July 1996 month end) were highly unusual"); *Camp v. Dema*, 948 F.2d 455, 459 (8th

15    Cir. 1991) ("party who engages in atypical business transactions or actions which lack business

16    justification may be found liable as an aider and abettor with a minimal showing of knowledge");

17    *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 97 (5th Cir. 1975) ("if the method or transaction

18    is atypical or lacks business justification it may be possible to infer the knowledge necessary for

19    aiding and abetting liability"); *see also In re First All. Mortg. Co.*, 471 F.3d 977, 999 (9th Cir. 2006)

20    ("That [the bank] came upon red flags which were seemingly ignored was enough to establish actual

21    knowledge under the California aiding and abetting standard . . . .").

22    Pioneer concedes that it was aware of the systematic NSF transactions that needed its daily

23    approval to be completed, the racketeering activity, throughout its moving papers. Pioneer certainly

24    knew the Enterprise's activities as they relate to the racketeering activity, that the Enterprise was

25    initiating NSF transactions to the tune of millions of dollars on a daily basis.

26    ████████████████████████████████████████

27    ████████████████████████████████████████

28    ████████████████████████████████████████

1 ███████████████████████████████████████████████

2 ███████████████████████████████████████████████

3 ███████████████████████████████████████████████

4 ███████████████████████████████████████████████

5 ███████████████████████████████████████████████

6 ███████████████████████████████████████████████

7 ███████████████████████████████████████████████

8 ███████████████████████████████████████████████

9 ████████████████████

10      1.      **Cachet Adequately Alleged an Associated-in-Fact Enterprise Exists and that**

11      **Pioneer Was a Member of the Enterprise**

12      Pioneer argues, without addressing any allegations, that the SAC fails to allege Pioneer and

13 Mann agreed to associate for any purpose other than bank and customer and therefore they did not

14 have a "common purpose" with the other Members of the Enterprise. (MTD, 10:6-8).  Pioneer again

15 argues the "agreement" element of Section 1962(d) claim. The existence of an Enterprise is proven

16 through evidence of an ongoing organization, formal or informal, and evidence that the various

17 associates function as a continuing unit. *Odom,* 486 F.3d 551. The requirement of a common purpose

18 can be met if the defendants were "each aware of the "essential nature and scope" of that enterprise

19 and intended to participate in it." *United States v. Christensen,* 801 F.3d at 985. A RICO enterprise

20 is not defeated even when some of the enterprise's participants lack detailed knowledge of all of the

21 other participants or their activities. Instead, "it is sufficient that the defendant know the general

22 nature of the enterprise and know that the enterprise extends beyond his individual role." *Id.* "The

23 evidence used to prove the pattern of racketeering activity and evidence establishing an enterprise"

24 may overlap.  *Boyle v. U.S.,* 556 U.S. 938, 947 (2009).  Here, the Enterprise had several common

25 purposes in addition to the illegal banking activity.  (SAC, ¶¶ 184, 190, 191, 192, 197)

26      Pioneer argues that knowledge as to the general nature of the enterprise cannot be inferred

27 by Pioneer's knowledge and approval of systematic kiting transactions, and further argues that it

28 simply would not make any sense. (MTD, 10:20-11:2) But these are questions of fact. The SAC sets

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1   forth in granular detail the fact that ███████████ ██████████████████

2   ████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████

22  ███████████████

23

24
    ─────────────────────
25  [2] ██████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████

28  (SAC ¶59)

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1  ████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████

3  ████████████████████████████    Certainly, Chemung and Berkshire did not agree that Pioneer's

4  actions constituted "normal" banking activity." As alleged, Berkshire and Chemung became co-

5  lenders on the ValueWise LOC. (SAC, ¶ 27) Berkshire and Chemung have alleged that Pioneer

6  concealed material facts from them including $106,084,574.31 in overdrafts during January, June,

7  July and August 2019, suspicious activity indicative of kiting and commingling, and substantial

8  third-party financing. (SAC, ¶ 98). From these facts alone agreement could be inferred if it were an

9  element of a 1962(c) claim, but at a minimum they create disputes concerning the common purpose

10  of conducting illegal banking activity, bank fraud and money laundering.

11      The cases relied on by Pioneer do not demonstrate that years-long criminal activity was

12  indicative of normal banking activity. The "routine commercial relationships" in these cases involve

13  business relationships where the service provider does not treat the fraudster any differently than

14  any other client of the service provider; *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042 at 2, (C.D.

15  Cal. July 13, 2015) (Wells Fargo and Fifth Third accused of RICO scheme with seller of consumer

16  products who was inappropriately charging customers, and court found no RICO violation when the

17  complaint stated that, "Every merchant using these payment networks submits transactions and

18  obtains payments in the same way."); *United Food & Com. Workers Unions v. Walgreen Co.*, 719

19  F.3d 849, 855 (7th Cir. 2013) (Drug manufacturer had ordinary business relationship with

20  Walgreens and did not conspire with Walgreens to fill drug prescriptions with generics, when

21  Plaintiff made no allegations about drug manufacturer beyond the manufacturer selling to

22  Walgreens like it would to any other pharmacy); *Ellis v. JPMorgan Chase & Co.*, 752 F. App'x 380,

23  382 (9th Cir. 2018), (vendor providing routine property inspection as vendor to mortgage company

24  was not co-conspirator with mortgage company); *In re Countrywide Fin. Corp. Mortg.-Backed Sec.

25  Litig.*, 2012 WL 10731957, at *9 (C.D. Cal. June 29, 2012) (same with providers of non-

26  individualized services to Countrywide in its securitizing and selling of risky RMBS loans), and

27  *Gardner v. Starkist Co.,* 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019) (fishermen and canneries who

28  sold tuna to StarKist not co-conspirators in StarKist's fraudulent marketing of tuna as dolphin-safe

1  as only fact allegations were that fishermen and canneries were catching storing and selling tuna).

2  These cases are all easily distinguished from the facts alleged here.

3      Pioneer completely ignores the other common purposes of the Enterprise. The SAC alleges

4  •  ███████████████████████████████████████

5  ███████████████████████████████████████

6  ███████████████████████████████████████

7  ███████████████████████████████████████

8  ███████████████████████████████████████

9  ████████████████████████ (SAC, ¶ 190).

10  •  ███████████████████████████████████████

11  ███████████████████████████████████████

12  ███████████████████████████████████████

13  ███████████████████████████████████████

14  ██████████████████ … (SAC, ¶ 191).

15  •  ███████████████████████████████████████

16  ███████████████████████████████████████

17  ██████████████████████████████ (SAC, ¶ 192).

18  ███████████████████████████████████████████

19  ███████████████████████████████████████████

20  ███████████████████████████████████████████

21  ██████████████████████████████████████

22  ███████████████████████████████████████████

23  ████████████████████████

24  ███████████████████████████████████████

25  ███████████████████████████████████████

26  ███████████████████████████████████████

27  ███████████████████████████████

28

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

15



(SAC, ¶ 58).

Pioneer fails to address these well pleaded allegations and simply argues that this is normal banking activity. A motion to dismiss is not the proper vehicle to resolve this issue.

**2.    Cachet Adequately Alleged that Pioneer Participated in the Affairs of the Enterprise**

Pioneer's arguments fail under 9th Circuit law, so it argues 2nd Circuit law. In the 9th Circuit, relevant questions regarding the participation element are whether the defendant: (1) occupies a position in the chain of command," (2) "knowingly implements [the enterprise's] decisions," (3) or is "indispensable to achieving the enterprise's goal." *Walter v. Drayson,* 538 F.3d 1244, 1248 (9th Cir. 2008). Despite the Court identifying *Walter* as the controlling law (Am. Order, 14:23-26), Pioneer fails to address it. Pioneer concedes that it implemented the decisions of the Enterprise, "As alleged, Pioneer merely **complied and assisted with the requests of certain customers**, without giving direction and without occupying a position in the "chain of command" (MTD, 13:1-4). Even if Pioneer is correct, which it is not, "giving direction and occupying a position in the chain of command" are not necessary elements for participation because Pioneer admits that it "knowingly implemented the Enterprise's decisions," by ████████████████████████
████████████████████  (SAC, ¶ 58).

The Ninth Circuit does not limit RICO liability to only those actors in charge of the enterprise or with "significant control over or within [the] enterprise." *Tatung Company Ltd. V. Shu Tze Hsu,* 217 F.Supp.3d 1138, 1152 (S.D. Cal. Nov. 14, 2016) (citing *Reves,* 507 U.S. 170, 179, n.4

1    (1993)). To the contrary, "it is not necessary to be upper management [in the enterprise] to be liable."

2    *Walter*, 538 F.3d at 1248. Thus, in *In re Outlaw Lab., LP Litig.*, 2020 U.S. Dist. LEXIS 71759, at

3    *34-35 (S.D. Cal. Apr. 23, 2020), the court found a law firm engaged in conduct sufficient to support

4    RICO liability under an extortion scheme when the law firm worked with a client to create a

5    fraudulent product and drafted fraudulent demand letters and complaints to further the scheme. The

6    court found allegations were sufficient to find culpable conduct under both the "giving, or taking,

7    direction" and "indispensable to achiev[ing] of the enterprise's goal" prongs of the *Walter* test, **when**

8    **only one is required.** Here, Cachet alleges Pioneer both took direction, which Pioneer concedes,

9    and was "indispensable to achieving the enterprise's goals." As alleged, ███████████████████

10   ████████████████████████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████████████████████

13   (SAC, ¶¶ 40, 186)

14          Courts have also found conduct by professionals who claim to be mere agents doing their

15   jobs sufficient to support RICO liability. *See e.g.*, *Cohen v. Trump*, 200 F.Supp.3d 1063, 1072 (S.D.

16   Cal. 2016) (finding issue of material fact as to conduct element of RICO where the defendant

17   "reviewed and approved" the precise "marketing materials" that "form[ed] the basis of the fraud

18   alleged by Plaintiff"); *Valadez v. Aguallo*, 2009 U.S. Dist. LEXIS 144988, at *8 (N.D. Cal. Aug.

19   28, 2009) ("conduct" element satisfied where defendants "indirectly influenced the decisions as to

20   which independent contractor would obtain contracts or associations with Avis.")  Here, Pioneer

21   "reviewed and approved" the precise NSF transactions, that "form the basis of the fraud alleged by

22   the Plaintiff." (SAC, ¶¶ 40-87). Consistent with *Cohen v. Trump* there is certainly a material issue

23   of fact as to the "conduct" element, but this is a Motion to Dismiss prior to Cachet to even being

24   permitted formal discovery.

25          The SAC does not allege that Pioneer should have stopped Mann's criminal activity, but that

26   it took affirmative action, direction, and was indispensable to Enterprise's goals.  (SAC, ¶¶ 11, 40)

27   ████████████████████████████████████████████████████████████████████████████████

28

**3.**  **Cachet Adequately Alleged that the Pattern of Racketeering Activity Proximately Caused Its Injuries**

Pioneer simply argues that the Court correctly determined that the theft was not related to

1  the racketeering activity.[3] Pioneer completely fails to recognize or address the allegations in
2  paragraphs 45-59 of the SAC. The ultimate theft of Cachet's funds was the result of the kiting
3  scheme and the money laundering scheme. The SAC sets forth several examples of Cachet's funds
4  being used directly in the kite.



*See e.g.*

28  SAC ¶¶ 40-89, 198-212, 39-99, 105-124, 130-142)

Regarding the $7 Million Theft the SAC alleges:



(SAC, ¶ 119).

Pioneer completely fails to address these allegations which evidence that the $26 Million in direct loss to Cachet was a direct result of the kiting scheme and money laundering scheme that utilized Cachet's system through the use of fraudulent batch files. Finally, Mann admitted that on or about August 30, 2019, the $19 Million theft and the $7 Million theft occurred as result of criminal activity and of the pattern of kiting.   (SAC, ¶¶ 139-142).

Pioneer argues that Cachet's damages related to loss of the value of its business and "attorneys fees" are a result of Bancorp Bank's termination of Cachet's banking privileges.  Cachet's position that Bancorp would not have terminated Cachet's banking privileges if the actions alleged in the SAC did not occur will be substantiated through discovery and is plainly supported by the fact that when Cachet was the victim of kiting scheme in August of 2019, Bancorp did not improperly terminate banking privileges. It only did so after it occurred twice.

Pioneer downplays the allegations regarding ██████████████████

████████████████████████████████████████

████████████████████ (MTD, 14:13-15:9).  First, Cachet is clearly permitted to plead in alternative, and has done so here. The Enterprise, as constructed, did collapse on August 30, 2019, but as alleged Pioneer ████████████████████

████████████████████████████████████████

████████████████████████████████████████

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618



**C.  <u>Cachet Adequately Alleged A RICO Conspiracy</u>**

A RICO conspiracy under Section 1962(d) may be established by proof of an agreement to commit a substantive RICO violation. *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 774-75 (9th Cir. 2002) ("It is the mere agreement to violate RICO that § 1962(d) forbids; it is not necessary to prove any substantive RICO violations ever occurred as a result of the conspiracy"). Nor must the conspirator have agreed to commit or facilitate each and every part of the substantive offense. *Howard v. America Online, Inc.*, 208 F.3d 741, at 751 (9th Cir. 2000), citing *Salinas v.*

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

*United States*, 522 U.S. 52, 65 (1997). In addition, the **"agreement need not be express as long as its existence can be inferred from words, actions, or interdependence of activities and persons involved."** *Oki Semiconductor*, 298 F.3d at 775 (emphasis added). If a RICO conspiracy is demonstrated, "[a]ll conspirators are liable for the acts of their co-conspirators." *Id*. A defendant can be held liable for a RICO conspiracy if the evidence shows that he or she "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise." *United States v. Fernandez*, 388 F.3d 1199, 1229-30 (9th Cir. 2004). Finally, there is no requirement that the defendant actually conspire to operate or manage the enterprise. *Id.* (affirming conviction under Section 1962(d) of defendant who collected money on behalf of member of enterprise, facilitated communications between conspirators and accepted payment for drugs sold through enterprise).

In the Ninth Circuit, "proof of an agreement the objective of which is a substantive violation of RICO (such as conducting the affairs of an enterprise through a pattern of racketeering) is sufficient to establish a violation of section 1962(d). It is only when proof of such an objective is lacking that the evidence must establish the defendant's participation or agreement to participate in two predicate offenses." *U.S. v. Tille*, 729 F.2d 615, 619 (9th Cir. 1984). "A RICO conspiracy 'requires the assent of each defendant who is charged, although it is not necessary that each conspirator knows all of the details of the plan or conspiracy.'" *Baumer v. Pachl*, 8 F.3d 1341, 1346-1347 (9th Cir. 1993) (quoting *U.S. v. Brooklier*, 685 F.2d 1208, 1222 (9th Cir. 1982)). As set forth above, proof of Pioneer's agreement to participate is abundant and can certainly be inferred from its actions and participation as alleged. Pioneer ignores its actions defrauding Chemung and Berkshire. Those allegations alone suffice to satisfy Pioneer's agreement to participate. (SAC, ¶¶ 98-99)

Pioneer continually argues the absence of the "agreement" element as if it pertains to the 1962(c) claim notwithstanding years of participation in the Enterprise, but that agreement is consumed in the "participation" element of a 1962(c) claim and is inferred from the actions of the members of the Enterprise, including the accused conspirator. Rarely does a defendant, criminal or civil concede that they "agreed" to commit a criminal act. It will almost always have to be inferred and is a question for the trier of fact.

1    Pioneer relies on *Glen Flora Dental Ctr., Ltd. v. First Eagle Bank*, 2024 WL 621601, at *12

2    (N.D. Ill. Feb. 14, 2024) a case that was decided on summary judgment, not a motion to dismiss.

3    The Court dismissed the RICO claims because the Plaintiff's theories of the bank's involvement

4    ended up having no factual support. "At the motion to dismiss stage, Judge Blakey inferred that

5    First Eagle agreed to participate because of allegations that First Eagle facilitated [and] benefitted

6    from the alleged scheme because it received 'significant income' from fees that it received from

7    overdraft activities on Plaintiffs' accounts." The facts simply did not support the Plaintiff's theory

8    of liability. "No evidence in the record shows that the Bank Defendants attempted to cultivate

9    overdraft fees from the Dental Practices." *Id.* at *13. Under *Glen Flora Dental Ctr., Ltd.*, Cachet's

10   conspiracy claims should survive, and Cachet should have the opportunity to prove its case.

11   ███████████████████████████████████████████████████████

12   ███████████████████████████████████████████████████████

13   ███████████████████████████████████████████████████████

14   ███████████████████████████████████████████████████████

15   ███████████████████████████████████████████████████████

16   ███████████████████████████████████████████████████████

17   ███████████████████████████████████████████████████████

18   ████████████████████████████████████ See *In re JUUL Labs, Inc., Mktg. Sales*

19   *Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 978 (C.D. Cal. 2022) (quoting *United States v.*

20   *Bibbero*, 749 F.2d 581, 588 (9th Cir. 1984) ("'One may join a conspiracy already formed and in

21   existence, and be bound by all that has gone before in the conspiracy, even if unknown to him.'").

22   Further, having participated in the Enterprise, "[Pioneer] is liable for the entire injury caused by the

23   enterprise's illegal conduct, regardless of whether it participated in every aspect of the conspiracy."

24   *Id.* citing *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002).

25   ███████████████████████████████████████████████████████

26   ███████████████████████████████████████████████████████

27   ████████████████████

28

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1    Cachet's argument in regard to proximate damages applies equally to the RICO conspiracy.

2    **D.    Cachet Adequately Alleged A Claim for Conversion**

3    As argued above, pursuant to FRCP 12(g)(2), the Court should disregard Pioneer's request

4    for dismissal of the conversion claim because the Court already determined that the conversion

5    claim was sufficiently plead in the FAC and there are no substantive changes to this claim in the

6    SAC. Even on the merits of Pioneer's arguments, however, the Court should deny Pioneer's request

7    that the Court dismiss Cachet's conversion claim.

8    **1.    Cachet Has Standing to Sue Pioneer for Conversion**

9    Pioneer argues, **without relevant authority**, that the Court cannot order it to return funds

10   stolen from Cachet because Pioneer obtained the stolen funds from the thieves, *i.e.*, Weitz, Cloud

11   and MyPayrollHR, rather than directly from Cachet. According to Pioneer, if a thief gives stolen

12   property to a third party who refuses to return the stolen property to the victim, the victim has no

13   recourse against the third party. Rather, the Court's power is limited to ordering the third party to

14   return the stolen property to the thief who then must return it to the victim. Pioneer's illogic is

15   manifest. As discussed in the following section, under New York law, when a bank has actual or

16   inquiry notice that funds in its depositor's account belong to a third party, and the bank exercises

17   purported setoff rights against those funds, the bank is liable to the third party for conversion.

18   Pioneer's citation to *Global View Ltd. Venture Cap. v. Great Cent. Basin Expl.*, 288 F. Supp.

19   2d 473, 479 (S.D.N.Y. 2003) for the uncontroversial proposition that conversion requires the

20   immediate right to possession does not support Pioneer's argument. *Global View* involved a lender

21   suing for conversion before the loan was due. *Id.* at 478. In that clearly different circumstance, the

22   court stated "[f]or purposes of a conversion claim, the Court will not deem a plaintiff to have

23   immediate possessory rights over money where that money represents damages in contract." *Id.* at

24   478. There is no contract between Cachet and Pioneer. *Global View* is inapposite.

25   Pioneer also mischaracterizes Cachet's allegations regarding Cachet's immediate right to

26   possession of the funds in its attempt to argue the applicability of *United States v. Cambio Exacto*,

27   166 F.3d 522 (2d Cir. 1999), which as shown below after clarifying Cachet's allegations concerning

28   its right to possession of the funds, is inapposite. First, Cachet does not assert a possessory interest

in the funds merely because it sent the funds to the employees but never received the Funds from the employers as a result of Mann diverting the funds to accounts at Pioneer. (MTD, 17:21-24) Rather, Cachet alleges two separate thefts using two separate methods resulting in two reasons why Cachet has a possessory interest in the funds.

The $19 Million theft, of which Mann directed $655,006.76 into the Weitz Account and $660,045.85 into the Cloud Account (SAC, ¶ 109), had nothing to do with employees, but did result in the theft of $19 Million from Cachet's settlement account. Cachet alleges that Mann effectuated nonpayroll transactions that resulted in debiting the $19 Million from Cachet's settlement account and crediting the Cloud account, the Weitz account, other accounts that Mann controlled at Pioneer and Bank of America, and also credited two accounts of entities to which certain entities that Mann controlled were indebted pursuant to the factoring scheme. (FAC, ¶ 106.) Cachet's right to immediate possession of the $19 Million is based upon the unauthorized use of Cachet's system and the unauthorized theft of the $19 Million from Cachet's settlement account, some of which went to the Weitz and Cloud accounts. Immediately prior to Mann's theft, Cachet had possession of the $19 Million while it was in Cachet's settlement account, and at all times Cachet had and continues to have the immediate right to possess these stolen funds—Mann's theft did not and cannot cut-off Cachet's right to possess those funds.

Second, the $7 Million theft involved diverting funds obtained from employers to the MyPayrollHR account instead of crediting them to Cachet's settlement account as required by the Remarketer Agreement. (SAC, ¶¶ 16, 17 and 119.) Cachet has the immediate right to possess the $7 Million pursuant to its contract with MyPayrollHR because MyPayrollHR debited employers' accounts for the specific purpose of crediting Cachet's settlement account with those funds.

Considering the foregoing, *Cambio Exacto* is inapposite. Money transmitters used Cambio Exacto to forward payments to recipients of money transfers. On occasion, Cambio Exacto would fund the recipients before receiving the funds from a money transmitter. After Cambio Exacto paid funds to intended recipients, and before Cambio Exacto was reimbursed, the government seized the funds in the money transmitter's accounts alleging they were the product of money laundering. *Id*. at 524-525. In other words, unlike the $19 Million, the seized funds were never in *Cambio Exacto's*

account, and unlike the $7 Million, the seized funds were not specifically obtained by the money transmitter for the benefit of Cambio Exacto.

Thus, Pioneer's standing argument is meritless. Pioneer would not need to return the funds to the thieves' accounts from which they came. Further, Cachet has an immediate possessory interest in the funds because the $19 Million was and unauthorized theft taken directly from Cachet's Settlement Account and the $7 Million was diverted from employers to the MyPayrollHR Account instead of to Cachet's settlement account.

### 2. Cachet Does Not Require a Constructive Trust to State a Claim for Conversion

As discussed in the following section, a constructive trust was imposed upon the funds at the very moment that the Enterprise illegally took possession of them. Nevertheless, even if a constructive trust were not imposed upon the funds, Cachet still has a possessory interest in the funds and can still state a claim for conversion because under New York law, when a bank has actual or inquiry notice that funds in its depositor's account are owned by a third party, the bank may not setoff those funds against a debt owed by the depositor. If a bank violates this rule, it is liable to the owner of the funds for conversion. There is no requirement that a Plaintiff asserting conversion against a bank based upon a bank's improper setoff of funds in an account of another demonstrate that there was a constructive trust over the funds at the time of conversion.

In general, a bank is entitled to set off funds in a depositor's general account against a debt owed the bank by the depositor. *Daly v. Atl. Bank of New York*, 201 A.D.2d 128, 129, 614 N.Y.S.2d 418 (App. Div. 1st Dept. 1994). However, when a bank is on notice that the funds in a depositor's account are owned by a third party, the bank cannot appropriate those funds in order to set them off against a debt of the depositor. *Id*. (citing *Raymond Concrete Pile Co. v. Fed'n Bank & Trust Co.*, 288 N.Y. 452, 43 N.E.2d 486 (1942); *Gerrity Co. v. Bonacquisti Constr. Corp.*, 156 A.D.2d 800, 549 N.Y.S.2d 532 (App. Div. 3rd Dept. 1989). A bank is considered to have such notice "when it is aware of facts which would fairly provoke it to inquire as to the true ownership of the funds and such inquiry, if made with ordinary diligence, would reveal the true ownership." *Id*. at 129-130 (citing *Union Stock Yards Nat'l Bank v. Gillespie*, 137 U.S. 411, 415-19 (1890)). Thus, New York

1  law contemplates situations in which the ownership of funds in an account is not solely a function

2  of the name of the account holder.

3      In *Daly*, the account holder was a real estate management company which was holding

4  money as an agent for various real estate cooperative associations. *Id*. at 130. The bank knew that

5  the real estate management company typically possessed large sums of money as an agent for

6  cooperative associations, that the management company was under criminal investigation for

7  mismanagement and various criminal acts, and that representatives of the cooperative associations

8  had requested the bank to freeze the accounts. *Id*. at 130-131. Despite this knowledge, the bank

9  offset the funds in the account against debts owed by the management company to the bank on an

10  account overdraft and a separate loan. *Id*. at 131. In reversing the trial court's grant of summary

11  judgment in favor of the bank on the conversion claim, the Appellate Division of the New York

12  Supreme Court held as follows:

13      . . . [W]e hold that since ABNY was on notice that the QMI was not the true owner
of the funds represented by the Reality Two account at the time it appropriated such

14  funds, **it should be held liable for their conversion**.

15  *Id*. at 132 (emphasis added).

16      Likewise, in *Schreibman v. Chase Manhattan Bank*, 15 A.D.2d 769, 224 N.Y.S.2d 977 (App.

17  Div. 1st Dept. 1962), the plaintiffs alleged that their stock was sold and the proceeds deposited in

18  their broker's account. *Id*. at 769-770. With knowledge that the plaintiffs owned the proceeds the

19  bank setoff the funds in satisfaction of a loan to the broker. The court stated:

20      It is apparent that if the facts as alleged were proven, the defendant could be guilty
of converting the funds of the plaintiff. **It is universally conceded that knowledge

21  upon the part of a bank that deposits made by a debtor of the bank in his own
name belonging to a third person absolutely precludes the bank from applying

22  such funds to the individual indebtedness of the depositor to it. . . It thus appears
that the facts alleged make out causes of action in conversion**.

23

24  *Id*. at 770 (emphasis added).[4]

25      *Daly* and *Schreibman* are on all fours with this action.  Like the banks in *Daly* and

26  *Schreibman*, Cachet alleges that Pioneer exercised its purported setoff rights (SAC, ¶¶ 130-136,

27

28  [4] The case was dismissed on statute of limitations grounds.

153, 165, 171, 238 and 253) and Pioneer admits the same. (MTD, 1:11-13; p. 4, fn. 1.) Before

exercising its purported setoff rights on September 4, 2019, Pioneer was aware of facts which would

fairly provoke it to inquire as to the true ownership of the funds in the Mann subject accounts.

Specifically, on August 30, 2019, Pioneer was informed that Bank of America would not

honor the 36 checks totaling more than $18 million that Mann had written on August 29, 2019.

(SAC, ¶¶ 102, 104.) This fact alone would cause a reasonable banker to thoroughly investigate all

accounts and activity. In response, Pioneer froze all Mann related accounts. (SAC, ¶ 104.) ████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████ SAC, ¶ 130.) These facts clearly demonstrate that Pioneer was on inquiry notice that third

party funds could be in the subject accounts.  Discovery will reveal where Pioneer believed the funds

flowing into the accounts came from after August 30, 2019, they had to understand it was not Mann

making deposits.

Further, Pioneer had actual notice that Cachet's funds were in the MyPayrollHR, Cloud and

Weitz accounts. On September 4, 2019, Cachet's President informed officers of Pioneer of the theft

of the funds. (SAC, ¶ 129.)

Having alleged sufficient facts that would have at least placed Pioneer on inquiry notice that

the funds may not be owned by the depositors, coupled with Pioneer's actual knowledge that the

Cachet's funds were in the accounts, Pioneer's setoff constitutes conversion. This conversion claim

does not require the imposition of a constructive trust.

### 3. A Constructive Trust Arose at the Time of the Thefts

Although Cachet does not require a constructive trust to establish its immediate possessory

right to the funds, a constructive trust arose at the same time the Enterprise stole the funds. Pioneer

appears to confuse the concept of a constructive trust with the constructive trust remedy. As shown below, Cachet was never divested of its beneficial title to the funds because a constructive trust arose immediately upon the theft of the funds by the Enterprise.

Unlike California Civil Code sections 2223 and 2224, which codify constructive trusts, a constructive trust under New York law is judicially created. New York courts have split on whether a constructive trust arises immediately upon the occurrence of the circumstances giving rise to the duty to surrender the property in question to another or not until imposed by a court. This issue was addressed in *United States v. Fontana*, 528 F. Supp. 137 (S.D.N.Y. 1981). The United States obtained a judgment against the Fontanas for unpaid federal income taxes. Prior to obtaining judgment, the Government attempted to levy upon money held by the Sheriff of Westchester County which the Government contended belonged to the Fontanas. The Sheriff refused to relinquish the funds because they were subject to a competing claim asserted by Fred Fontana's former employer, Great Lakes Carbon Corporation ("Great Lakes"), which asserted that the funds were traceable to wrongful acts by Fred Fontana against Great Lakes. *Id*. at 139.

Great Lakes' contended that the Fontanas held bare legal title to the funds, that it owned the beneficial title and the right to compel the Fontanas to convey legal title to it which would unify the bifurcated title, and that the Government's tax lien never attached to the funds beneficially owned by Great Lakes. Like Pioneer, the Government contended that a constructive trust is merely a remedy imposed by a court, and does not exist until a court declares it to exist. Therefore, since no court had yet imposed the remedy, no bifurcation of legal and equitable title had taken place, and the Fontanas possessed a sufficient property interest to which the tax lien attached. *Id*. at 143.

The court analyzed the authorities in detail, explained why the opinion written by Judge Cardozo that the Government relied upon did not support the Government's position, and ruled in favor of Great Lakes, stating:

> The most direct statement of when a constructive trust arises appears in 5 Scott, Trusts (3d ed.) §¶ 462.4 ("At what time the constructive trust arises"). [footnote omitted] Professor Scott is absolutely clear: "Where the title to property is acquired by one person under such circumstances that he is under a duty to surrender it, a constructive trust immediately arises…. It would seem that there is no foundation whatever for the notion that a constructive trust does not arise until it is decreed by a court. It arises when the duty to make restitution arises, not when the duty is

subsequently enforced." Id. The indisputable fact that the defrauded person can reach the property in the hands of a transferee, see Simonds v. Simonds, 45 N.Y.2d 233, 242, 380 N.E.2d 189, 194, 408 N.Y.S.2d 359, 364 (1978), unless the transferee is a bona fide purchaser, demonstrates that "(the) beneficial interest in the property is from the beginning in the person who has been wronged." 5 Scott, Trusts (3d ed.) § 462.4. It is a misunderstanding of the word "constructive" to think that the court "constructs" rather than "construes" a trust. Id. Cf. Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 388, 122 N.E. 378, 381 (1919) (questioning whether the circumstances demand the Court's "implication" of a trust). The court thus construes-or interprets-the circumstances and finds that "some of the consequences which would follow from the creation of an express trust should also follow." 5 Scott, Trusts (3d ed.) § 462.4.

This Court therefore finds that New York law holds a constructive trust to exist from the time of the occurrence of the circumstances giving rise to the duty to surrender the property in question to another.

*Id.* at 146.

As such, a constructive trust arose at the moment that the Enterprise stole the funds. Cachet's beneficial interest in the funds remained notwithstanding that the funds were credited to the MyPayrollHR, Cloud and Weitz accounts. Pioneer was informed of the theft, *i.e.*, Cachet's beneficial interest in the funds, but nevertheless proceeded to wrongfully exercise its purported setoff rights, thereby converting the funds in which Cachet had an immediate right of possession.

### 4. **Cachet Does Not Have an Adequate Legal Remedy Against Mann or MyPayrollHR Because They are Insolvent**

Continuing to confuse the concept of a constructive trust that arises at the time of the occurrence of the circumstances giving rise to the duty to surrender the property in question to another, with the constructive trust **remedy**, Pioneer argues that a constructive trust **remedy** is not available to Cachet because it has an adequate remedy at law, *i.e.*, suing Mann and [MyPayrollHR] for breach of contract. (MTD, 19:1-2.) To clarify the confusion that Pioneer seeks to create, Cachet seeks legal remedies in connection with its conversion, RICO, RICO conspiracy and aiding and abetting claims for relief. Cachet simply asserts that a constructive trust arose over the funds upon the theft of the funds, as explained in *Fontana*, *supra*, and that this fact further establishes Cachet's possessory right to the funds. That constructive trust can co-exist with Cachet's legal claims. Further, if for any reason the legal remedies that Cachet seeks are not available to Cachet, Cachet also asserts and seeks equitable relief by way of its unjust enrichment and money had and received claims.

1   Pioneer did not cite any authority for the proposition that a plaintiff cannot assert both legal and

2   equitable claims in the same complaint. This is routinely done.

3       Even if Pioneer's discussion regarding a constructive trust **remedy** were applicable, which

4   it is not, Mann is in prison. (SAC, ¶ 14.) Presumably, his assets have been seized. Under these

5   circumstances a judgment against Mann would not be an adequate legal remedy.

6       New York courts have held that insolvency of a defendant may leave a plaintiff without an

7   adequate remedy at law. *See N. Hill Funding of N.Y., LLC v. Amincor Other Assets, Inc.*, 2016 N.Y.

8   Misc. LEXIS 4922, at *17, 2016 NY Slip Op 32638(U) (Sup. Ct. N.Y. Cnty. Jan. 17, 2016) (granting

9   summary judgment on the first cause of action for specific performance of the Guaranty because the

10  plaintiff has no adequate remedy at law under the Guaranty against a judgment proof defendant);

11  *see also Cargill Soluciones Empresariales, S.A. De C.V., SOFOM, E.N.R. v. Desarrolladora*

12  *Farallon S. de R.L. de C.V.*, 2017 N.Y. Misc. LEXIS 2967, at *24-25, 2017 NY Slip Op 31650(U)

13  (Sup. Ct. N.Y. Cnty. July 21, 2017) (granting the plaintiff leave to assert a claim for specific

14  performance of the Guaranty against a defendant because the defendant may be judgment proof, and

15  thus absent specific performance, the plaintiff may have no enforceable remedy at law).

16      The decisions that Pioneer cites do not support Pioneer's argument that suing an insolvent

17  incarcerated thief and his defunct entity for breach of contract is an adequate remedy to recover the

18  funds converted by Pioneer. *Kamdem-Ouaffo v. Pepsico, Inc.*, 2015 WL 1011816, at *15 (S.D.N.Y.

19  Mar. 9, 2015), involved an employment dispute. The employee claimed that he was entitled to be

20  listed on patents. The employee's twelfth cause of action was for constructive trust, *i.e.,* a remedy.

21  *Id*. at 47. Unlike Cachet's rights against Pioneer, the employee's rights against the employer were

22  governed by an employment agreement. *Id*. at *4. Since he had a direct contract action against the

23  employer a constructive trust remedy was not appropriate. *Id*. at *48-49. Likewise, *In re First Cent.*

24  *Fin. Corp.*, 377 F.3d 209 (2d Cir. 2004) involved a contract dispute between the parent company's

25  bankruptcy trustee and the subsidiary insurance company regarding entitlement to a tax refund. *Id*.

26  at 211-212. In the instant case Cachet's claim is against Pioneer, with which it has no contract.

27      Finally, both *United States v. $79,000 in Acct. No. 2168050/6749900 at Bank of New York*,

28  1996 WL 648934 (S.D.N.Y. Nov. 7, 1996) and *United States v. PokerStars*, 2012 WL 1659177

1  (S.D.N.Y. 2012) are inapposite for at least two reasons. First, they were forfeiture proceedings

2  where the plaintiffs sought to recover funds seized by the government. Second, they were not

3  seeking to recover funds from the wrongdoer who still possessed the money.

4      Whether Cachet has an adequate legal remedy against Mann and MyPayrollHR has no

5  impact on the fact that a constructive trust arose upon the theft of Cachet's funds.

6      **5.**     <u>**Cachet Adequately Alleged Pioneer's Wrongful Refusal to Turn Over the Funds**</u>

7      <u>**to Cachet**</u>

8      Pioneer constructs a straw man argument by arguing there is no legal support for the premise

9  "that Pioneer had legal or contractual authority (plus an enforceable legal duty) to respond to

10  Cachet's demand by taking funds that had been deposited in the accounts of Pioneer customers and

11  giving those funds to Cachet, a non-customer of the bank." (MTD, 22:3-5.) But this is not what

12  Cachet alleges. Rather, Cachet alleges that Pioneer purported to setoff all the funds in the Mann

13  Entities accounts, including Cachet's funds, thereby converting Cachet's funds to itself, and then

14  refused Cachet's demand for the return of its funds in Pioneer's possession with full knowledge that

15  some or all of the funds in these accounts were the property of third parties.

16  ████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████

21  ████████████████████████████████████  (SAC ¶ 136), and then refused Cachet's

22  demand for the return of its funds. (SAC ¶ 167) Pioneer's argument misstates Cachet's claim and for

23  that reason alone the Court should disregard it in its entirety.

24      **6.**     <u>**Cachet Adequately Alleged a Conversion Claim with respect to the Funds in the**</u>

25      <u>**Weitz Account**</u>

26      Under the *Daly* and *Schreibman* decisions discussed *supra*, Pioneer exercised its purported

27  setoff rights when it was on inquiry and actual notice that the funds in the Mann Entities accounts,

28  including the *Weitz* Account (which Pioneer used to launder funds in September 2019) were owned

1  by third parties, including Cachet. Therefore, ███████████████████████ (SAC,

2  ¶ 136), Pioneer is liable for conversion regardless of whether it was a general account.

3  **E.    Cachet Adequately Alleged Unjust Enrichment And Money Had And Received Claims**

4  As argued above, pursuant to FRCP 12(g)(2), the Court should disregard Pioneer's request

5  for dismissal of the unjust enrichment and money had and received claims because the Court already

6  determined that they are sufficiently plead in the FAC and they remain unchanged in the SAC. Even

7  on the merits of Pioneer's arguments, however, the Court should deny Pioneer's request that the

8  Court dismiss Cachet's unjust enrichment and money had and received claims.

9  **1.    Pioneer had Authority to Return the Funds to Cachet**

10  Pioneer again uses a straw man argument. Cachet does not assert that "banks are obligated

11  by principles of equity or quasi-contract to give funds in customer accounts to non-customers

12  whenever those non-customers demand them based on accusations of fraud or theft by a customer."

13  (MTD SAC, 24:12-13.) As demonstrated *supra*, Cachet alleges that with constructive and actual

14  knowledge that Cachet's Funds were in the Mann Entities accounts, Pioneer purported to exercise it

15  setoff rights and will prove the elements of an unjust enrichment claim, *i.e.*, that (1) Pioneer was

16  enriched, (2) at Cachet's expense, and (3) equity and good conscience militate against permitting

17  Pioneer to retain what plaintiff is seeking to recover. *Diesel Props S.r.l. v. Greystone Bus. Credit II*

18  *LLC*, 631 F.3d 42, 55 (2d Cir. 2011).

19  Further, Cachet does not allege that it demanded that Pioneer give it funds in Mann Entities

20  accounts. Cachet alleges that Pioneer purported to setoff all of the funds in the Mann Entities

21  accounts (*i.e.*, transfer the funds from the Mann Entities accounts to Pioneer's general account),

22  including Cachet's funds, thereby converting Cachet's funds to itself, and then refused Cachet's

23  demand for the funds in Pioneer's possession. Specifically, Cachet alleges that its President informed

24  Pioneer of the thefts (SAC ¶ 129), ███████████████████████████████████

25  ███████████████████████████████████████████████████████

26  ███████████████████████████████████████████████████████

27  ███████████████████████████████████████████████████████

28  ███████████████████████████████████████████████████████

1  ████████████████████████████████████████████████████████

2  ███████████████████████████████████  There is no basis for Pioneer's

3  argument that it did not have authority to return the funds to Cachet because they "were in customer

4  accounts." The Court should ignore Pioneer's mischaracterizations of Cachet's allegations.

5      **2.**    <u>**Cachet Adequately Alleged a Relationship with Pioneer**</u>

6  Whether there is sufficient connection between Cachet and Pioneer to state an unjust

7  enrichment claim was raised in Pioneer's Motion to Dismiss the FAC (Motion to Dismiss FAC,

8  18:24-20-18, Dkt. 98) and resolved against Pioneer. (Am. Order, 55:23) Pioneer has not stated any

9  justification for raising this issue again, and this Court should not entertain this procedurally

10  defective request for reconsideration. Nevertheless, Cachet responds to this argument in the event

11  that the Court is inclined to consider Pioneer's request for reconsideration.

12  Pioneer's argument that "[Cachet] had no dealings or relationship with Pioneer whatsoever"

13  ignores the SAC allegations. Cachet's and Pioneer's dealings include the banking transactions

14  alleged in the SAC. (SAC, *passim*) They include Pioneer converting Cachet's funds that are subject

15  to a constructive trust. (SAC, ¶ 130-136; 153) They also include the discussion between Cachet's

16  President and representatives of Pioneer regarding the theft of Cachet's funds being held by Pioneer.

17  (SAC, ¶ 129) These allegations are more than sufficient to sustain an unjust enrichment claim.

18  The instant action is not analogous to the *Georgia Malone* case. There, the court noted that

19  "a real estate company that prepared due diligence reports for a developer in connection with the

20  potential purchase of commercial properties alleges that a rival brokerage firm was unjustly enriched

21  when it acquired the materials from the developer and later obtained a commission on the ultimate

22  sale of the properties. "The issue before us is whether a sufficient relationship existed between the

23  two real estate firms to provide a basis for an unjust enrichment cause of action. Based on the

24  allegations presented in the complaint, we hold that the relationship between these two parties was

25  too attenuated." *Ga. Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 513, 950 N.Y.S.2d 333, 973

26  N.E.2d 743 (2012). There was no direct connection between the two real estate companies, each of

27  which only dealt directly with the developer and not each other.  Here, Pioneer received the funds

28  directly from Cachet, not through payment by a third-party.

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447 (S.D.N.Y. 2014), is likewise inapposite. The analysis of a connection being "too attenuated" boiled down to there being "no dealings" at all:  "Where plaintiff and defendant 'simply had no dealings with each other,' their relationship is 'too attenuated'" to support an unjust enrichment claim." And there were no dealings at all because the "two parties never transacted or otherwise maintained a business relationship at all." *Id.* at 479. The facts of this case are a bit complicated, but essentially, plaintiff had contracts with several banks and no relationship or transaction history with several other banks. The court dismissed the banks where there was no connection or prior business relationship. That is not the case here.  There were years of banking transactions and a discussion that established a connection between Cachet and Pioneer that is not too attenuated.

Finally, Pioneer argues that Cachet has not stated a claim for unjust enrichment because there is no connection which could have caused a reliance or inducement on Cachet's part, as mentioned in the *Georgia Malone*, *supra*, and *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y. 3d 173, 919 N.Y.S.2d 465, 944 N.E.2d 1104 (2011) decisions. As explained below, while some New York courts have found that reliance or inducement is required, such a finding is based upon a misunderstanding of *dicta* in *Mandarin Trading*. This misunderstanding is explained by the court in *Vincent V Hodes Family Irrevocable Tr. v. Advance Entm't LLC*, 2020 WL 3060892, 2020 NY Slip Op 31786(U) (Sup. Ct. N.Y. Co. June 05, 2020) wherein Judge Masley explained:

> In *Georgia Malone & Co., Inc. v Rieder*, the Court of Appeals affirmed its holding in *Mandarin Trading Ltd. v Wildenstein*, holding that while a plaintiff need not "allege privity it ha[s] to assert a connection between the parties that was not too attenuated" (*19 NY3d at 517*, citing *Mandarin Trading Ltd., 16 NY3d at 182*). The Court of Appeals was clear that, in order to sufficiently plead a claim for unjust enrichment, there must be sufficient allegations of a connection, such dealings between the parties or some contact (*id. at 517-518*).
>
> The Moving Defendants argue that, in addition to a connection, plaintiff must also allege a reliance or inducement, seizing on the *Mandarin Trading Ltd.* Court's reference to "reliance" and "inducement". In *Mandarin Trading Ltd.*, the Court of Appeals stated, "[m]oreover, under the facts alleged, there are no indicia of an enrichment that was unjust where the pleadings failed to indicate a relationship between the parties that could have caused reliance or inducement. (*Mandarin Trading Ltd., 16 NY3d at 182*). This quote was cited by the Court of Appeals in *Georgia Malone & Co., Inc. (19 NY3d at 517*). However, as Chief Judge Jonathan Lippman pointed out in his dissent in *Georgia Malone & Co., Inc.,*

1
2
3
4

"The language describing the connection between Mandarin Trading and Wildenstein as not a 'relationship ... caus[ing] reliance or inducement' was merely for illustrative purposes and was dicta alluding back to how Mandarin also failed to meet the standard for negligent misrepresentation. It was not a statement of the standard for unjust enrichment actions and the majority here likewise correctly refrains from applying the heightened reliance/inducement standard"

5
6
7
8

(*Georgia Malone & Co., Inc, 19 NY3d at 521*[citations omitted]). This court agrees that the majority in *Georgia Malone & Co., Inc.* did not apply a heightened reliance/inducement standard in analyzing the unjust enrichment claim; rather, the majority analyzed the connection between the parties and determined that the complaint lacked sufficient allegations to show dealings or contact amongst the parties.

9
10
11
12
13
14
15
16

Further, in *Mandarin Trading Ltd.*, the plaintiff argued that he relied upon defendant's appraisal letter when purchasing a piece of art even though defendant did not know of plaintiff's existence and the letter was not written for plaintiff's benefit (*Mandarin Trading Ltd., 16 NY3d at 176-177*). The Court of Appeals held that the unjust enrichment claim failed because the complaint lacked allegations indicating a relationship between the parties or an awareness of the plaintiff's existence by the defendant (*id. at 182*). The Court then went on to opine that the mere existence of the letter, upon which the plaintiff alleged relied on, did not render the transaction "one of equitable injustice" (*id. at 183*). The Court's mention of reliance and inducement was  based on the specific set of facts in that case where plaintiff hinged his unjust enrichment claim on his reliance on that letter. The Mandarin Trading Court also did not apply this heightened standard, but rather, held that the unjust enrichment claim could not advance because the connection between the parties was "too attenuated" (*id. at 182*).

17 *Id*. at *3-6 (emphasis added). Cachet respectfully submits that Judge Masley's thoughtful analysis is
18 correct, and that certain New York courts have misread the *Mandarin Trading* and *Georgia Malone*
19 opinions.

20 Further, there is no rational reason for additional elements of reliance or inducement, and
21 including theses element would lead to absurd results. For example, such a requirement would
22 prevent a burglary victim from asserting an unjust enrichment claim against the burglar because the
23 victim was not induced to act and did not rely upon the burglar. This Court should follow Judge
24 Masley's reasoning and find that reliance or inducement is not required to state a claim for unjust
25 enrichment under New York law.

26 **3.    The Remarketer Agreement Does Not Govern the Subject Matter**

27 Whether the Remarketer Agreement governs the subject matter and whether the Court
28 should consider the Remarketer Agreement in connection with a motion to dismiss was raised in

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

36

1   Pioneer's Motion to Dismiss the FAC (Motion to Dismiss FAC, 20:19-22:6, Dkt. 98) and resolved

2   against Pioneer. (Am. Order, 55:23) Pioneer has not stated any justification for raising this issue

3   again, and this Court should not entertain this procedurally defective request for reconsideration.

4   Nevertheless, Cachet responds to this argument in the event that the Court is inclined to consider

5   Pioneer's request for reconsideration, which the Court should not.

6          Cachet does not dispute that an equitable claim can be dismissed if there is an enforceable

7   contract covering the subject matter of the litigation. That is not the case here. In support of its

8   untenable argument that the Remarketer Agreement precludes Cachet's unjust enrichment claim,

9   Pioneer cites allegations in the SAC that reference portions of the Remarketer Agreement (MTD,

10  26:25-27:14) and incorrectly suggests that the subject of this action is "how the underlying ACH

11  transactions would be processed by Mann and MyPayrollHR." (MTD, 27:13-14.) The true subject

12  of this action is the recovery of the stolen funds and other damages from a bank that was involved

13  with the Enterprise and knowingly converted the stolen funds. The fundamental premise of Pioneer's

14  argument is clearly incorrect and flies in the face of its argument that the relationship between

15  Cachet and Pioneer is at once too attenuated while at the same time it is controlled by a contract

16  between Cachet and MyPayrollHR.

17         Building on its incorrect statement regarding the subject matter of this action, Pioneer

18  suggests that because of the Remarketer Agreement Cachet's sole remedy is somehow to sue Mann

19  and MyPayrollHR. (MTD, 27:10-12.) Pioneer absurdly argues if a party to a contract steals money

20  from the other party, and thereafter a third party obtains the funds knowing that they are stolen, the

21  victim has no recourse against the third party, the third party is entitled to retain the stolen funds,

22  and the victim's sole remedy is against the thief.

23         In addition to the illogic of Pioneer's argument, all of the cases it cites are inapposite.

24  *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 807 N.Y.S.2d 583, 841 N.E.2d 742 (2005) involved

25  three insureds suing their respective insurers where all the parties in the lawsuit were also parties to

26  the three insurance contracts at issue. *Goldman* does not stand for a proposition the court never

27  considered, namely whether a non-party to a contract can use the contract as a shield to an unjust

28  enrichment claim. Similarly, *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 521

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1    N.Y.S.2d 653, 516 N.E.2d 190 (1987) is inapposite because it also involved only parties that were

2    also parties to the contract. *See id.* at 389 ("undisputed that the relationship between the parties was

3    defined by a written contract").

4         While the dismissed individual defendants in the *Vitale v. Steinberg*, 307 A.D.2d 107, 764

5    N.Y.S.2d 236 (App. Div. 1st Dept. 2003) case Pioneer relies upon were not signatories to the

6    contract at issue, they were members of the plaintiff's employer's board of directors' compensation

7    committee, which administered a benefit plan the employer offered to some of its employees,

8    including the plaintiff. The *Vitale* court did not explain why the benefit plan barred unjust

9    enrichment claims against the individual defendants. Instead, it cited in support of its ruling two

10   cases, *Bellino Schwartz Padob Advert. v Solaris Mktg. Grp.*, 222 A.D.2d 313, 635 N.Y.S.2d 587

11   (App. Div. 1st Dept. 1995), and *Feigen v Advance Capital Mgt. Corp.*, 150 A.D.2d 281, 283 (1989),

12   both of which concluded without analysis that a contract governing the subject matter of the

13   plaintiff's claim barred quasi-contract claims against third-party non-signatories, citing as

14   supporting authority *Clark-Fitzpatrick*, which, as explained above, did not involve non-signatories

15   to a contract. *See Bellino*, 222 A.D.2d at 313; *Feigen*, 150 A.D.2d at 283.

16        In *Mueller v. Michael Janssen Gallery PTE. Ltd.*, 225 F. Supp. 3d 201 (S.D.N.Y. 2016) the

17   plaintiff purchased art pursuant to a contract that provided that the sellers would buy it back if the

18   artist disavowed the work. The artist disavowed but the sellers did not refund the entire price.

19   Plaintiff sued a non-party to the contract for unjust enrichment who acted as an advisor and had

20   recommended the buy back provision. *Id*. at 204. The court dismissed unjust enrichment on the

21   ground that, unlike the Remarketer Agreement, the contract covered the precise situation. *Id*. at 208.

22   Pioneer has not demonstrated that the Remarketer Agreement covers any claims against Pioneer,

23   including a situation where a third party assists Mann and the Mann Entities in years of ACH kiting

24   and then knowing converts Cachet's funds.

25        In *McEssy v. Gray,* 2016 WL 10518458 (N.D.N.Y. Aug. 11, 2016) the plaintiff sued based

26   upon management fees received by a defendant in the course of a securities Ponzi scheme. *Id*. at 36.

27   Since unlike the Remarketer Agreement the plaintiff's unjust enrichment claims were premised upon

28   a management fee governed by an enforceable contract, such unjust enrichment claims are

precluded. *Id.* at *38.

This case is not factually analogous to any case cited by Pioneer. Here, there is no contract between Cachet and Pioneer and absolutely no connection between the Remarketer Agreement and Pioneer, which did not affect or implicate Pioneer in any way. Even if the Remarketer Agreement were relevant, it does not address claims against nonparties such as Pioneer and cannot bar Cachet's claim for unjust enrichment against Pioneer. More pointedly, the Remarketer Agreement does not govern Pioneer's conduct with respect to Cachet's funds, including Pioneer's ███████████ ███████, refusing to return Cachet's money and rejecting Cachet's debit transactions, all of which occurred after Cachet's and Pioneer's representatives discussed the Mann fraud and Pioneer decided to protect its own balance sheet at Cachet's expense. The Court should disregard Pioneer's argument that the Remarketer Agreement deprives Cachet of its unjust enrichment claim. It does not.

**F.    Cachet Adequately Alleged Aiding and Abetting Fraud and Conversion Claims**

Pioneer attempts to downplay the fact that it was informed by Cachet that the funds were obtained through fraud, and fails to address that by September 4, 2019, it knew of the conversion, and still assisted Mann in his conversion of the funds and took possession of them. (SAC, ¶¶ 128, 238) Without Pioneer's aiding and abetting the conversion could not have been completed and Cachet's funds would have been returned.

Pioneer argues that its alleged lack of knowledge of the conversion, assuming its knowledge only occurred after the fact, somehow relieves it of the aiding and abetting that conversion. (MTD, 32:26-33:1) Pioneer relies exclusively on *Musalli Factory For Gold & Jewelry v. JP Morgan Chase Bank, N.A.*, 261 F.R.D 13 (2009) for the proposition that Pioneer had to be aware of the conversation before it took place. (MTD, 31:21-24). Pioneer fails to mention that the court was analyzing an aiding and abetting fraud claim, not an aiding and abetting conversation claim. *Id.* The court indicated that one must know about the fraud before the [injury], in other words one must know about the wrongful act before it can be liable for the damages for assisting therein. *Musalli Factory For Gold & Jewelry*, 261 F.R.D at 25.

Pioneer cites to no law to support the argument or the concept that holding funds and refusing to return them to their rightful owner as part of conversion shields you from liability for aiding and

1  abetting the conversion because the conversion occurred before you received the funds. Pioneer's

2  reasoning is circular. How can one know about conversion prior to it occurring? Here, it was alleged

3  and is not disputed that Pioneer was aware of the conversion of Cachet's funds and aided and abetted

4  that conversion by taking possession of the funds.  (SAC, ¶ 238)

5      Pioneer argues that it did not have actual knowledge that the Mann was going to commit fraud,

6  while at the same time conceding that his knowledge can be inferred from the actions of the those

7  involved. (MTD 31:5-7) Pioneer relies heavily on the Court's prior ruling that Cachet had not

8  adequately pleaded Pioneer knew that Mann was committing thefts, but ignores Cachet's allegations

9  regarding fraudulent representations that were made each time a NSF transaction occurred. (SAC, ¶

10  59).

11      The SAC sets forth a plethora of examples in which Pioneer was informed of fraudulent

12  transactions that had been initiated from accounts with insufficient funds. (See Generally ¶¶ 40-87).

13  Further, the SAC incorporates all prior allegations which adequately define Pioneer's knowledge of

14  the fraudulent NSF transactions. More specifically, the SAC alleges NSF transactions in which

15  Cachet's funds were obtained as a result of fraudulent misrepresentations. For example, ██████

16  ████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████

18  ███████████████████████████ (SAC, ¶ 45). Pioneer was aware of these frauds

19  on a regular basis. The thefts were the result of a kiting transaction that utilized Cachet's funds and

20  it is adequately plead that this fraud would not have and could not have occurred, but for the

21  substantial assistance provided by Pioneer. Pioneer, as alleged was aware of the fraudulent NSF

22  transactions and provided substantial assistance assuring that fraud was concealed. (SAC, ¶ 85).

23  **G.    Leave To Amend Should Be Granted**

24      Cachet believes that it has adequately addressed the issues the Court identified in the FAC

25  such that each claim for relief in the SAC is adequately pled. However, if the Court determines that

26  any claim for relief in the SAC is deficient in any manner, Cachet respectfully requests leave to

27  amend to cure any such deficiencies.

28

## IV.    <u>CONCLUSION</u>

For all the foregoing reasons the MTD should be denied in its entirety.

DATED:  June 13, 2024

**SHULMAN BASTIAN FRIEDMAN & BUI LLP**

By:  _____
      J. Ronald Ignatuk
      Attorneys for Cachet Financial Services

41

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618.

A true and correct copy of the foregoing document entitled (*specify*):  PLAINTIFF CACHET FINANCIAL SERVICES' OPPOSITION TO PIONEER BANCORP INC.'S AND PIONEER BANK'S MOTION TO DISMISS DEBTOR'S SECOND AMENDED COMPLAINT [REDACTED]  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  June 20, 2024  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)  June 20, 2024 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Vincent P. Zurzolo
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1360
Los Angeles, CA 90012-3332

☐ Service information continued on attached page.

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| June 20, 2024 | Sharon Seelert | */s/ Sharon Seelert* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

<u>ADDITIONAL SERVICE INFORMATION</u> (if needed):

1.  <u>**SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**</u>

- **Shane M Biornstad**    sbiornstad@shulmanbastian.com,
  sseelert@shulmanbastian.com
- **Franklin J Contreras**    FContreras@shulmanbastian.com,
  sseelert@shulmanbastian.com
- **Eric D Goldberg**    eric.goldberg@dlapiper.com, eric-goldberg-
  1103@ecf.pacerpro.com
- **Joseph R Ignatuk**    rignatuk@shulmanbastian.com,
  sseelert@shulmanbastian.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

2.  <u>**SERVED BY U.S. MAIL**</u>

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**